IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OPTER T. JOHNSON (#M-01803), ) | |
| ) | |
| Plaintiff, ) | Case No. 14 C 0240 |
| ) | |
| v. ) | |
| ) | Judge James B. Zagel |
| SALVADOR GODINEZ, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Opter Johnson (hereinafter, "Plaintiff" or "Johnson") brought the instant lawsuit pursuant to 42 U.S.C. § 1983 alleging that officials at the Northern Reception and Classification Center (hereinafter, "NRC") at Stateville Correctional Center (hereinafter, "Stateville") violated his civil rights due to various alleged unconstitutional conditions of confinement. Defendants Salvador Godinez, Marcus Hardy, Michael Lemke, Jerry Lyte, Nikki Robinson and Tracy Engleson (collectively, "Defendants"), move for partial summary judgment (Dkt. No. 32). They contend that with the exception of one claim related to a lack of hot water, Plaintiff failed to exhaust his administrative remedies. For the reasons that follow, the Defendants' motion is denied.

### Local Rule 56.1

A district court may insist on strict compliance with its local rules regarding summary judgment. *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004). This means that a court may decide a motion based on the factual record outlined in the parties' Local Rule 56.1 Statements of Material Facts. *Id.* (internal citation omitted). Although Johnson is *pro se*, he must comply with Local Rule 56.1. *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 Fed.

App'x 642, 643 (7th Cir. 2011); *see Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("even *pro se* litigants must follow rules of civil procedure").

Defendants filed a Local Rule 56.1(a)(3) Statement of Material Facts along with appropriate supporting documentation. Consistent with the Local Rules, Defendants served Plaintiff with a Local Rule 56.2 Notice to Pro Se Litigant Opposing Motion for Summary Judgment. (Dkt. No. 35.) That notice, among other things, explained Plaintiff's need to respond to Defendants' Statement of Material Facts with documentation supporting any disagreement with the facts as presented by Defendants. Notwithstanding this, Plaintiff has not submitted a response to Defendants' Local Rule 56.1 Statement of Material Facts, nor has he submitted his own statement of additional material facts. Accordingly, the facts set forth in Defendants' Local Rule 56.1(a)(3) Statement are deemed admitted to the extent they are supported by evidence in the record. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880, 884 (7th Cir. 2012).

However, because Johnson is proceeding *pro se*, the Court has considered the factual assertions he makes in his brief and his affidavit opposing summary judgment (Dkt. No. 46), but only to the extent he has pointed to evidence in the record or could properly testify himself about the matters asserted. *Antonelli v. Sherrow*, 02 C 8714, 2005 U.S. Dist. LEXIS 20912, at *5–*6 (N.D. Ill. Sept. 21, 2005); *see Boykin v. Dart*, No. 12 C 4447, 2014 U.S. Dist. LEXIS 156010 (N.D. Ill. November 4, 2014) ("Although the Court is entitled to demand strict compliance with Local Rule 56.1, it ordinarily affords *pro se* plaintiffs significant leeway in responding to summary judgment filings.") Additionally, the Court observes that a non-movant's failure to comply with Local Rule 56.1 does not automatically result in judgment for the movant. *See Brown v. Navarro*, 09 C 3814, 2012 U.S. Dist. LEXIS 129697, at *7 (N.D. Ill. Sept. 11, 2012)

2

(citing *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006)). Rather, "even where the non-moving party fails to file a timely response to a motion for summary judgment, the district court must still review the uncontroverted facts and make a finding that summary judgment is appropriate as a matter of law." *Nabozny v. Podlesny*, 92 F.3d 446 (7th Cir. 1996).

## **Factual Background**

The following factual background is taken from Defendants' Rule 56.1 Statement of Material Facts and the supporting documentation in the record. Plaintiff is currently an inmate in the custody of the Illinois Department of Corrections ("IDOC") at the Danville Correctional Center. (Defs.' 56.1 (a)(3) Statement at ¶ 1.) Plaintiff brought this lawsuit alleging that Defendants were deliberately indifferent to unconstitutional conditions of confinement while he was housed at the NRC, the male intake facility at Stateville. (*Id.*) Defendant Godinez is the director of the Illinois Department of Corrections (hereinafter, "IDOC"), while the other Defendants are current or former employees at Stateville. (*Id.* at ¶ 2.) Plaintiff alleges various unconstitutional conditions of confinement, including: (1) overcrowding and understaffing; (2) delayed medical care; (3) unsanitary living conditions; (4) contaminated water; (5) inadequate cleaning supplies; (6) infestation of roaches, ants, spiders, and mice; (7) unsanitary shower facilities; (8) lack of hot water; (9) unsanitary food trays; (10) lack of clothing/clothing not regularly washed; and (11) insufficient phone access. (*Id.* at ¶ 4.) Plaintiff alleges that Defendants knew of these unconstitutional conditions of confinement and failed to correct them. (*Id.* at ¶ 5.)

The IDOC has a formal grievance procedure for inmates. (*Id.* at ¶ 6.) Generally, there are three steps to the grievance process. (*Id.* at ¶ 7.) First, an inmate must attempt to resolve

3

grievances through his counselor. (*Id.; see* 20 Ill. Admin. Code § 504.810(a).) If that fails, the inmate may file a written grievance to the grievance officer within 60 days of the incident. (*Id.; see* 20 Ill. Admin. Code § 504.810(a).) The grievance officer may interview the inmate and/or any witnesses and obtain relevant documents to determine the merits of the grievance. (*Id.; see* 20 Ill. Admin. Code § 504.830(c).) After investigation, the grievance officer's conclusions and recommended relief are forwarded to the chief administrative officer (hereinafter, "CAO"). (*Id.; see* 20 Ill. Admin. Code § 504.830(d).) The decision of the CAO or the CAO's designee is then submitted to the inmate. (*Id.; see* 20 Ill. Admin. Code § 504.830(d).) The CAO is to advise the inmate of the decision within two months after receipt of the written grievance, when "reasonably feasible under the circumstances." (20 Ill. Admin. Code § 504.830(d).)

If, after receiving that decision, the inmate disagrees with it, he may appeal in writing to the director of the IDOC through the director's designee, the Administrative Review Board (hereinafter, "ARB"). (Defs.' 56.1 (a)(3) Statement at ¶ 8; *see* 20 Ill. Admin. Code § 504.850(a).) In order to appeal, the inmate should attach the grievance officer's report and the CAO's decision. (Dkt. No. 33-3, Aff. of Sherry Benton, at ¶ 3; *see* 20 Ill. Admin. Code § 504.850(a).) The ARB reviews the appeal and determines whether a hearing is necessary. (Defs.' 56.1 (a)(3) Statement at ¶ 8; *see* 20 Ill. Admin. Code § 504.850(b).) If it is determined that the grievance is without merit or can be resolved without a hearing, the inmate is advised. (*Id.; see* 20 Ill. Admin. Code § 504.850(b).) Otherwise, an ARB hearing is scheduled. (*Id.*) The ARB submits a written report to the director or his designee, who reviews the report and makes a final determination of the grievance. (*Id.;* see 20 Ill. Admin. Code § 504.850(f).) A copy of the ARB's report and the director's final decision are then sent to the inmate. (*Id.*; 20 Ill. Admin.

Code § 504.850(f).)

In an emergency situation, a prisoner may request that a grievance be reviewed on an expedited basis by submitting the grievance directly to the CAO, rather than a counselor or grievance officer. (Defs.' 56.1 (a)(3) Statement at ¶ 9; *see* 20 Ill. Admin. Code § 504.840.) If the CAO determines there is a substantial risk of imminent injury or serious harm to the inmate, the grievance may be handled on an emergency basis. (*Id.*; 20 Ill. Admin. Code § 504.840(a).)

Certain issues may be addressed directly to the ARB, rather than first through a counselor or grievance officer. (Defs.' 56.1 (a)(3) Statement at ¶ 10; *see* 20 Ill. Admin. Code § 504.870.) Those issues are: (a) decisions involving the involuntary administration of psychotropic medication; (b) decisions regarding protective custody placement, including continued placement in or release from protective custody; (c) decisions regarding disciplinary proceedings which were made at a facility other than the facility where the inmate is currently assigned; and (d) other issues except personal property issues which pertain to a facility other than the facility where the inmate is currently assigned. (*Id.; see* 20 Ill. Admin. Code § 504.870(a).)

Between June 17, 2013, and September 15, 2013, Plaintiff filed numerous grievances concerning the conditions of confinement at the NRC at Stateville. (Defs.' 56.1 (a)(3) Statement at ¶ 12.) These grievances addressed the following issues: (1) trust fund/visitation; (2) lack of under clothing; (3) unsanitary showers; (4) inadequate cleaning supplies; (5) pest infestation; (6) unsanitary food trays; (7) delayed razors/haircuts; (8) toilet mold; (9) inadequate phone access; (10) inadequate showers; (11) facility transfer; (12) medical treatment; (13) commissary; and (14) lack of hot water. (*Id.*) Plaintiff submitted a single emergency grievance dated July 2, 2013, concerning a lack of hot water. (*Id.*)

Sherry Benton, a chairperson of the Office of Inmate Issues for the IDOC, reviewed the records for grievances filed by Johnson. (Dkt. No. 33-3, Aff. of Sherry Benton, at ¶ 7.) All of the grievances submitted to the ARB by Johnson were returned to Johnson because he had not submitted a counselor's response, a grievance officer's report, a response from the CAO, or some combination of those documents. (*Id.*; Defs.' 56.1 (a)(3) Statement at ¶¶ 13, 14.)

## **Analysis**

Pursuant to the Prison Litigation Reform Act (hereinafter, "PLRA"), inmates who bring civil rights suits must first exhaust their administrative remedies within the prison system. 42 U.S.C. § 1997e(a). Failure to exhaust available remedies is an affirmative defense, and defendants bear the burden of proving such a failure. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

Exhaustion is necessary even if the prisoner is requesting relief that cannot be granted through the administrative process, such as monetary damages, or if the prisoner believes that exhaustion is futile. *Dole*, 438 F.3d at 808–09 (internal citations omitted). The PLRA's exhaustion requirements are designed to allow the prison's administrative process to run its course before litigation commences. *Id.* at 809 (citing *Cannon v. Washington*, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam)). This allows for corrective action that might obviate the need for litigation, and serves to alert prison officials to on-going problems at the facility. *Id.* (citing *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002)).

The Seventh Circuit has taken a strict compliance approach to exhaustion. *Id.* In order to properly exhaust his administrative remedies, the inmate must use all the steps the agency provides, and use those steps properly. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Pozo v.*

*McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("[U]nless the prisoner completes the administrative process by following the rules the state has established for that process, exhaustion has not occurred.") This means that an inmate must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. A prisoner's failure to properly exhaust his administrative remedies results in dismissal of his lawsuit. *Id.* When there are factual issues regarding an exhaustion defense, the court must resolve those issues through an evidentiary hearing. *Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011).

As noted above, Plaintiff has conceded Defendants' factual allegations, including that he failed to submit the required documentation to the ARB in the form of a counselor's response, a grievance officer's report, a response from the CAO, or some combination of those documents. In response to this, Plaintiff contends, generally, that the Defendants prevented him from exhausting his remedies by deliberately disregarding his grievances. (Dkt. No. 46, Aff. of Opter Johnson, at ¶ 3.) In support of this, Plaintiff submits a brief affidavit contending that while he was incarcerated at the NRC, he had little access to the counselor or grievance office, and "did all he could from the disadvantage that he was functioning from to send a series of attached grievances, letters and complaint's [sic] regarding the inhumane, degrading, and horrific conditions of confinement that affiant experienced, and that the Defendant's [sic] in question engaged in a series of withholding said grievances causing the time for filing to expire, failing to timely respond, causing the time-frame for responding to expire and ignoring or destroying said grievances entirely." (*Id.* at ¶ 2.)

Plaintiff appears to be contending that he attempted to submit his grievances through the proper channels, but was prevented from doing so. A review of Plaintiff's grievances shows that some have no response in the box marked "Counselor's Response," others are marked "Dup" (Plaintiff submitted multiple duplicate grievances about various complaints), and still others contain a counselor response. (*See* Dkt. No. 33-4). Defendants have not submitted a grievance log, affidavit, or any other evidence from the NRC indicating whether any of Plaintiff's numerous grievances were received by the grievance officer at the NRC, or whether the grievance officer ever responded to any grievances by Plaintiff.

In some instances, at least, it appears that Plaintiff bypassed the appropriate channels. For example, in regard to a grievance about dirty showers, dated August 18, 2013, Plaintiff received a response from his counselor dated September 13, 2013, which indicated that maintenance had been made aware of the problem, and was working on it. This grievance was apparently received by the ARB on October 11, 2013. (*See* Dkt. No. 33-4, at pg. 6; Dkt. No. 33-5, at pg. 16.) Had Plaintiff submitted this through proper channels, and sent a copy of the grievance to his grievance officer upon receipt of the counselor's response, the CAO would have had two months from that date, or until mid-November, to respond to Plaintiff's grievance. 20 Ill. Admin. Code § 504.830. Therefore, Plaintiff's submission of this grievance to the ARB appears at the very least premature.

Yet in other instances, it is unclear whether Plaintiff ever received an institutional response to his grievance, and if not, why not. Plaintiff submitted a grievance on August 13, 2013, stating that he was coughing and wheezing, and was told by the doctor and the nurse in the Health Care Unit that they did not carry cough syrup and could not do anything for his cough. A

8

counselor's response to this grievance, dated October 2, 2013, indicates that "[y]our original grievance has been forwarded to the grievance office to await response from the HCU. At which time you will receive a copy of same." (*See* Dkt. No. 33-4, at pg. 7.) There is no indication in the record as to whether Plaintiff received a response.

There also is no indication in the record as to whether Plaintiff received responses to grievances about his visitor's list/trust fund balance (Dkt. No. 33-4, at pg. 22), rodent infestation (Dkt. No. 33-4, at pg. 26), lack of razors/haircuts (Dkt. No. 33-4, at pg. 28), and toilet mold (Dkt. No. 33-4, at pg. 29). In his grievances, Plaintiff also complains of being unable to find his counselor or get responses from his counselor. (Dkt. No. 33-4, at pg. 8.)

It is well-established that an inmate must exhaust only those administrative remedies actually available to him. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). When prison officials fail to respond to grievances, those remedies become "unavailable." *Id.* "Because the prison employees bear the burden on exhaustion, they must do more than point to a lack of evidence in the record; rather they must 'establish affirmatively' that the evidence is so one-sided that no reasonable factfinder could find that [plaintiff] was prevented from exhausting his administrative remedies." *Schaefer v. Bezy*, 336 Fed. App'x 558, 560 (7th Cir. 2009) (quoting *Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.*, 971 F.2d 37, 42 (7th Cir. 1992)).

On this record, Defendants have failed to show that the administrative grievance process at Stateville NRC was available to Plaintiff in regard to each of his grievances, but he simply failed to take advantage of it. Therefore, the Court denies Defendants' motion for partial summary judgment. Because resolution of the exhaustion issue could serve to limit the issues

before the Court, and because genuine issues of material fact exist as to whether Plaintiff exhausted his administrative remedies, and whether there were any institutional barriers to him doing so, the Court will schedule a *Pavey* hearing in this matter.

## Conclusion

For the foregoing reasons, Defendants' motion for partial summary judgment (Dkt. No. 32) is denied. Due to a genuine issue of material facts being present as to whether Plaintiff exhausted his administrative remedies, the Court will schedule a *Pavey* hearing on the matter. A status hearing is scheduled for 12/22/2014 at 9:15 a.m.

Dated: 12/10/2014

James B. Zagel
United States District Court Judge