UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

OPTER T. JOHNSON,

    Plaintiff,

v.

SALVADOR GODINEZ, et al.,

    Defendants.

No. 14 C 240
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

In this action, Plaintiff Opter T. Johnson alleges that he was subject to various unconstitutional conditions of confinement while an inmate at Stateville prison. Specifically, Plaintiff alleges that, in various ways, persons employed at Stateville knowingly subjected him to (1) overcrowding and understaffing; (2) delay of medical care; (3) unsanitary living conditions; (4) contaminated water' (5) failure to provide adequate cleaning supplies; (6) infestations of roaches, ants, spiders and mice; (7) unsanitary living conditions; (8) lack of hot water; (9) unsanitary food trays; (10) lack of clothing and unwashed clothing; and (11) insufficient phone access.

There are three steps to the grievance process. First, an inmate must attempt to resolve the problem with his or her counselor. If this fails, the second step is to submit a written grievance to a grievance officer within 60 days of the incident. The counselor can interview witnesses (including the aggrieved) and examine documents. In the third step, the grievance officer reaches a conclusion and sends it to the chief administrative officer ("CAO") who decides the merits and submits it to the inmate. This final step must be concluded within two months after the written grievance is received when this is feasible.

An inmate who is not satisfied with this decision may appeal in writing to the Director of the Illinois Department of Corrections through the Administrative Review Board ("ARB"), which is the director's designee. An appeal requires the inmate to provide the grievance officer's report along with the CAO's decision. The ARB may decide without a hearing. If a hearing is required, however, the ARB conducts a hearing and then provides a written report to the director or his designee who decides the merits of the grievance after reviewing the ARB's report. The ARB report and the director's final decision are then sent to the inmate.[1]

Plaintiff filed many grievances in a three-month period concerning various issues.[2] The only emergency grievance that was filed by Plaintiff complains about a lack of hot water; this grievance is not a part of Defendant's motion for partial summary judgment. The rest of Plaintiff's grievances were returned to him because Plaintiff did not submit all the data required, particularly his counselor's response, a grievance officer's report, a response from the CAO, or some combination thereof.

The federal law regarding prison litigation requires prisoners to exhaust remedies. The steps to exhaustion are set forth in state law and prison administration rules. In this Circuit, strict compliance with the exhaustion process is required. The exhaustion process has to go forward even where the prisoner is seeking something that is unattainable. Similarly, even when the prisoner knows that exhaustion is futile, he or she must proceed until the futile request is finally denied by prison administrators.

*Pavey v.Conley*, 544 F.3d 739 (7th Cir. 2008) provides a procedure wherein the question

---

[1] There are exceptions in emergency cases. Some issues can be reported directly to the ARB, i.e., involuntary administrations of psychotropic drugs, protective custody, etc.

[2] A list includes grievances about trust funds, visitations, lack of underwear, unsanitary showers, inadequate cleaning supplies, pest infestations, unsanitary food trays, delay of razors and haircuts, toilet mold, inadequate phone access, inadequate showers, transfers to another facility, medical treatment, commissary, and lack of hot water.

of exhaustion of administrative remedies can be determined at an initial stage. A failure to exhaust has to be proven by the defendant prison personnel.

Here, Defendants were all employees of the Department of Corrections who dealt with grievances. Defendants prepared a grievance timeline as to each of the grievances filed by Plaintiff, and all parties stipulated to this timeline.

Examination of the stipulated timeline clearly shows that, while many of the grievances bear grievance stamps, ARB stamps, or counselor responses—or at times two such markers—none of the grievances on the timeline manifest all of the documentary indicia required by the exhaustion process. Defendants have therefore proven that the requirements for exhaustion were not fulfilled.

The determination of this question is the duty of the judge. A *Pavey* hearing is one in which the judge determines the facts based on the evidence. It is the judge who decides any credibility issues, and I believe that Plaintiff did not perform all of the steps that would be necessary to exhaust his remedies. Although Plaintiff testified that he had done so, this is clearly not true. Indeed, the volume of Plaintiff's filed grievances is large, and it is not surprising that a single individual filing this many complaints is likely to skip or forget steps necessary for exhaustion. I heard Plaintiff testify, and his certainty is unwarranted. Plaintiff's implicit view that IDOC conspired to remove evidence from each of his many complaints is similarly not credible.

Defendants' collection of evidence proves that exhaustion did not occur. In the absence of a response from Plaintiff's counselor **and** the Grievance Officer **and** the ARB, Plaintiff has not exhausted his administrate remedies. Without these necessary responses, Plaintiff cannot pursue any of these claims in this court.

What remains of Plaintiff's many complaints is just one, a grievance about the absence of

hot water in his cell. On this grievance, Plaintiff did exhaust his remedies, a fact which the IDOC admits.

I enter summary judgment against all Plaintiff's unexhausted claims. This case may go forward on the merits of the hot water claim and that claim alone.

ENTER:

*James B. Zagel*
United States District Judge

DATE: October 27, 2015